IMCO, INC., Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 95–5111.

United States Court of Appeals, Federal Circuit.

Oct. 8, 1996.

Don A. Howard, Huntsville, AL, argued, for plaintiff-appellant. Of counsel was Bradley P. Ryder.

Laurel A. Loomis, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director. Of counsel on the brief were Capt. Maria S.L. Chapa, U.S. Army Legal Services Agency, Arlington, VA, and Hal C. Dilworth, Jr., Office of Chief Counsel, U.S. Army Missile Command, Redstone Arsenal, AL.

Before NEWMAN, MAYER, and PLAGER, Circuit Judges.

MAYER, Circuit Judge.

IMCO, Inc., appeals the April 28, 1995 judgment of the United States Court of Federal Claims, 33 Fed. Cl. 312 (1995), dismissing its bid protest challenging the Army's cancellation of a solicitation for dummy missiles and shoe alignment fixtures after IMCO had been proposed for debarment. The court held that because the decision to actually debar IMCO was not arbitrary and capricious, or in violation of applicable law, and was based on substantial evidence; and the remaining bids were unreasonably high, the cancellation was not improper. Because the court's review should have been limited to whether the proposed debarment was improper, we affirm on the ground that the Army committed no prejudicial error in proposing IMCO for debarment.

### Background

In December 1992, the United States Army Missile Command (MICOM) issued Invitation for Bids DAAHO1–93–B–0001 ("solicitation" or "IFB"), a small business set-aside, for the production of 127 dummy Hellfire missiles and thirty shoe alignment fixtures. IMCO and fifteen other small businesses submitted bids. MICOM rejected the four lowest bids, putting IMCO's bid, the fifth lowest, in line for the award. However, the government's preaward survey team recommended against awarding the contract to IMCO, in part because of the performance risk "evidenced by the number of IMCO contracts that ha[d] been recently cancelled or terminated." That is, the agency determined that IMCO was not a responsible contractor. See 48 C.F.R. § 9.103 (1995) (contracts shall only be awarded to responsible contractors).

In accordance with the Federal Acquisition Regulation (FAR), the agency referred its determination to the United States Small Business Administration (SBA). Id. § 19.602–1. The SBA's Atlanta regional office informed MICOM that it planned to issue IMCO a certificate of competency, essentially overruling the determination that IMCO was not responsible. See 15 U.S.C. § 637(b)(7) (1994); 48 C.F.R. Subpart 19.6 (1995). MICOM then appealed the proposed issuance of the certificate to the SBA's Washington, D.C. office.

Even prior to the preaward survey, however, MICOM had recommended that IMCO be debarred. In August 1993, Diane Landtroop, the Chief of Procurement for Division D at MICOM, who had no responsibility for the procurement at issue, recommended to

the Army's Procurement Fraud Division that IMCO, its president, and an affiliate, Ikard Manufacturing Co., be debarred from further contracting with the government. More than eight months later, the Procurement Fraud Division recommended to the Army's debarment official, Brigadier General Thomas Cuthbert, that he debar IMCO.

By letter dated April 13, 1994, General Cuthbert advised IMCO that it was proposed for debarment because it (1) had a history of failure to perform one or more contracts; (2) willfully failed to perform nine purchase orders valued at $106,030; and (3) had attempted to use the performance of those nine purchase orders to obtain payment on unrelated contracts, evincing a lack of integrity. The letter also informed IMCO that it could oppose the proposed debarment, either in person, in writing, or through a representative.

MICOM informed the SBA on April 19, 1994, that IMCO had been proposed for debarment. Because the proposed debarment rendered it ineligible to receive the contract, 48 C.F.R. § 9.405(a), (d)(4) (1995) (firms proposed for debarment are precluded from receiving government contracts), the SBA suspended proceedings concerning IMCO's entitlement to a certificate of competency.

In the meantime, the sixth lowest bidder had gone out of business. The contracting officer then determined that the remaining bids were unreasonably high and that award to any of those bidders would not be in the government's best interests. Consequently, MICOM cancelled the solicitation on July 20, 1994.

After receiving two extensions, IMCO submitted a written response to its proposed debarment on July 14, 1994, challenging it on several grounds. After notifying IMCO that it was entitled to present testimony, which it declined, and extending the time within which to make a decision for "good cause," General Cuthbert informed IMCO on September 16, 1994, that he had found no genuine dispute of material fact and that it was debarred through April 13, 1997.

On October 24, 1994, IMCO filed suit in the Court of Federal Claims seeking to over- turn the debarment and reinstate the IFB. The parties filed cross-motions for summary judgment. The court framed three issues pertinent to our inquiry: (1) whether IMCO's procedural due process rights were violated in the actual debarment proceedings; (2) whether General Cuthbert's debarment decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and (3) whether MICOM's cancellation of the solicitation breached its duty to fairly and honestly consider IMCO's bid. 33 Fed. Cl. at 316. The court resolved these issues against IMCO, which appealed.

At oral argument, a question arose about the Court of Federal Claims' jurisdiction to review the propriety of the actual debarment in the course of a bid protest. We ordered supplemental briefing to address the following three questions: whether the trial court's jurisdiction was limited to a review of the proposed debarment; if so, whether the government committed prejudicial error in proposing IMCO for debarment; and what effect, if any, an error in the proposed debarment had on the disposition of this case.

## Discussion

We must always examine not only our own jurisdiction, but also that of the court from which an appeal is taken. *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995); *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir.1983). Initially then, we must determine whether, in the context of a bid protest, the Court of Federal Claims exceeded its jurisdiction in reviewing the propriety of the actual debarment, when only the proposed debarment rendered IMCO ineligible for contract award. Jurisdiction being a matter of law, our review is *de novo*. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed.Cir.1995) (in banc).

The United States "is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (citations omitted); *see also Hercules Inc. v. United States*, — U.S. —, —, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996). Indeed, it is

an "age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988).

By the Tucker Act, Congress conferred upon the Court of Federal Claims jurisdiction "to render judgment on any claim against the United States founded ... upon any ... implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1994); *Hercules,* —— U.S. at ——, 116 S.Ct. at 985; *Central Ark. Maintenance, Inc. v. United States,* 68 F.3d 1338, 1341 (Fed.Cir.1995). Under section 1491(a)(1), the court is authorized to entertain bid protests "challenging the proposed award of contracts based on alleged improprieties in the procurement process." *Central Ark. Maintenance,* 68 F.3d at 1341. A disappointed bidder may invoke this jurisdiction by alleging a government breach of the implied contract to have its bid fairly and honestly considered. *Id.* The government breaches this implied contract if its consideration of the protester's bid was arbitrary and capricious. *Id.; see also E.W. Bliss Co. v. United States,* 77 F.3d 445, 447 (Fed.Cir.1996). If such a breach occurred and the protest is filed before the contract is awarded, the court has the authority to grant injunctive relief to the protester. 28 U.S.C. § 1491(a)(3); *Central Ark. Maintenance,* 68 F.3d at 1341–42. The Tucker Act does not give the court jurisdiction to review the propriety of an agency's decision to debar a contractor, however; such a challenge must be brought in district court under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1994). *See ATL, Inc. v. United States,* 736 F.2d 677, 682 (Fed.Cir.1984) (*ATL I* ); *ATL, Inc. v. United States,* 735 F.2d 1343, 1344 (Fed.Cir.1984); *Gonzalez v. Freeman,* 334 F.2d 570, 575–76 (D.C.Cir.1964) (Burger, J.).

The gravamen of IMCO's "protest" is that the government breached its implied contractual duty to fairly and honestly consider the bid by arbitrarily and capriciously debarring IMCO and then cancelling the IFB. Under 48 C.F.R. § 9.405(a) and (d)(4), however, once IMCO was *proposed* for de-

barment, MICOM was not permitted to award it the contract. There is no dispute that if IMCO had been properly eliminated from the competition, the cancellation of the IFB was proper because the other eligible bids were unreasonably high. Thus, the issue is whether the proposed debarment, which rendered IMCO's bid ineligible for award and resulted in cancellation of the IFB, was arbitrary or capricious. If it was not, the government did not breach its contractual duty. *See ATL I,* 736 F.2d at 681–82; *Electro–Methods, Inc. v. United States,* 728 F.2d 1471, 1475 (Fed.Cir.1984). But the trial court expanded that inquiry to address whether the debarment itself was improper.

The court recognized that an "immediate question that arises is whether the decision to cancel the procurement should be sustained on the straight-forward basis that IMCO was proposed for debarment at the time the bids were being considered." 33 Fed. Cl. at 316. It held though that "the debarment proceedings were brought within the scope of review because the proposed debarment was the basis for eliminating IMCO from the competition." *Id.* Thus, while recognizing that it was the proposed debarment that required IMCO to be eliminated from the competition and ultimately required cancellation of the IFB, the court held that the validity of the debarment was "inextricably linked" with the procurement, and that it would be unable to provide meaningful relief unless it considered the actual debarment. It concluded, therefore, that "IMCO may argue that its contractual entitlement to a full, fair, and honest consideration of its bid was breached by a debarment that was" improper. *Id.* at 316–17.

IMCO relies principally on *ATL I* and *Electro–Methods* in arguing that the court did not exceed its jurisdiction by reviewing the propriety of the debarment. Both cases, however, expressly limit their holdings to the facts. *ATL I,* 736 F.2d at 682 ("While generally the Government is correct that a contractor would attack a suspension in district court, on the facts of this particular case the Government's contention does not obtain."); *Electro–Methods,* 728 F.2d at 1475 (emphasizing "the specific factual circumstances of

this pre-award case"). On their facts, each case teaches against construing the court's jurisdiction so broadly as to permit review of the debarment.

Looking at *Electro–Methods* first, in August 1983, the Air Force suspended * Electro–Methods, rendering it ineligible for award of approximately 32 government contracts on which it had pending bids, including low bids. *Electro–Methods,* 728 F.2d at 1475. Electro–Methods then filed a bid protest in the Court of Federal Claims,** seeking an injunction to prevent the award of those contracts on the ground that it had been unlawfully suspended. *Id.* at 1474. This court held that the fact that Electro–Methods' claims concerned an allegedly unfair suspension, ordinarily challenged in district court, did not impact the court's jurisdiction because the effect of the suspension was, or would have been, to cause Electro–Methods to lose the contracts. Importantly, however, the trial court had determined that it did not have jurisdiction over five of the solicitations challenged by Electro–Methods that had either resulted in contract award or been cancelled, as was the case here, at the time the complaint was filed. *See Electro–Methods, Inc. v. United States,* 3 Cl.Ct. 500, 505 (1983). We did not expressly address whether that was correct, since the court's jurisdiction over the remaining "outstanding" solicitations permitted it to inquire into the propriety of the suspension. Nevertheless, *Electro–Methods* does not support the court's exercise of jurisdiction in this case, which was filed more than three months after the IFB was cancelled. Indeed, it could be argued that *Electro–Methods* requires dismissal of IMCO's suit because it was filed after cancellation of the IFB.

In *ATL I,* the contractor filed a protest in the Court of Federal Claims, challenging the Navy's delay in awarding it four contracts. ATL argued that the delay constituted a constructive debarment or suspension. Just prior to trial, the Navy suspended ATL. The court enjoined the award of the contracts at issue until after trial, and ultimately ordered the Navy to provide ATL with a fair hearing on its suspension, leaving the injunction in place. The Navy gave ATL a hearing, after which the suspension remained effective. ATL sued again, arguing that several procedural flaws had denied it due process. The court agreed, ordered a new hearing, and the government appealed.

We held that the Court of Federal Claims properly exercised jurisdiction over ATL's bid protest under section 1491(a)(1). 736 F.2d at 681–82 & nn. 14–15. At the time the suit was filed, ATL was arguing only that the Navy was tardy in awarding four contracts on which it was the low bidder. We said the court undoubtedly had jurisdiction over that complaint, and once jurisdiction attached, it could not be divested by subsequent events.

Here, however, the court had no preexisting jurisdiction. IMCO filed a protest of the cancellation of the IFB, arguing that the cancellation was arbitrary and capricious because of the improper debarment. However, debarment came long after the cancellation. Only actions before the cancellation could have deprived IMCO's bid of fair and honest consideration.

Moreover, in *ATL I* the contract awards were stayed while the suspension process continued; thus, throughout the suspension proceedings, there was a continuing duty to treat the bids fairly. Here, however, there was no ongoing contractual duty to consider IMCO's bid once it was proposed for debar-

---

* Both of these cases involved suspensions, not debarments or proposed debarments. This distinction, however, is without significance. There is very little difference or practical effect between a suspension and a proposed debarment. In both instances, the contractor: (1) may not receive any new contracts; (2) receives a notice from the agency apprising it of its suspension or proposed debarment; (3) is notified that it has the right to submit information and argument in opposition to the suspension or proposed debarment; and (4) has certain hearing rights if its

submission raises an issue of material fact. *Compare* 48 C.F.R. § 9.406 (1995) (debarment) *with id.* § 9.407 (suspension).

** At the time of Electro–Methods' protest, the trial court was named the United States Claims Court. The court was renamed the United States Court of Federal Claims, effective October 29, 1992. *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902, 106 Stat. 4506, 4516 (1992). For simplicity, we refer to the court by its current name throughout this opinion.

ment, and certainly not after MICOM cancelled the solicitation. Consequently, while the court had jurisdiction to review the propriety of the proposed debarment, it erred in extending its review to encompass the legality of the debarment itself.

In challenging the propriety of the proposed debarment, IMCO does not argue that the government failed to comply with the FAR's notice requirements. Rather, it claims that the proposed debarment: (1) was for the improper purpose of punishment; (2) violated its procedural due process rights; and (3) was improper because it was not based on all relevant information.

As to its first argument, IMCO correctly points out that Landtroop recommended to the Army's Procurement Fraud Division the "maximum debarment as punitive action" in order to persuade IMCO that the Army will not suffer continued willful nonperformance of contracts. IMCO argues that its proposed debarment was therefore improper because it was for the purpose of punishment. *See* 48 C.F.R. § 9.402(b) (1995) (debarments are not to be used "for purposes of punishment"). While Landtroop's choice of words calls into question her motives in recommending debarment, IMCO has not established, or even alleged, that any improper motive on her part is chargeable to General Cuthbert. His proposed debarment was not directly based on Landtroop's recommendation; it was based on the recommendation of the Procurement Fraud Division. In fact, General Cuthbert testified that Landtroop had probably overstated IMCO's problems. There is no suggestion that he did not perform his duties in good faith, and in accordance with the law and governing regulations. *See Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 795 (Fed.Cir.1993). Consequently, IMCO has not established that the proposed debarment was a punishment.

IMCO's constitutional argument also lacks merit. We do not doubt that IMCO has a liberty interest, of which it may not be deprived without due process. *See ATL I,* 736 F.2d at 683; *see also Reeve Aleutian Airways, Inc. v. United States,* 982 F.2d 594, 598 (D.C.Cir.1993) (contractor "has a liberty interest in avoiding the damage to its reputa-

tion and business caused by a stigmatizing suspension"). But we agree with *Girard v. Klopfenstein,* 930 F.2d 738, 742–43 (9th Cir. 1991), that the process due a contractor facing a proposed debarment is satisfied by the procedures set out at 48 C.F.R. § 9.406.

IMCO's final argument, that the proposed debarment was deficient, is similarly unavailing. This is precisely what IMCO had the right to raise, and did raise, in response to the notice of proposed debarment. But it does not affect the validity of the proposed debarment itself.

*Conclusion*

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

***AFFIRMED.***