**GLAZER CONSTRUCTION CO., INC., and Murray Glazer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. 98–11445–PBS.**

United States District Court, D. Massachusetts.

May 25, 1999.

John P. Davey, Davey & Davey, Canton, MA, for Glazer Construction Co., Inc., Murray Glazer, plaintiffs.

Susan M. Poswistillo, United States Attorney's Office, J. Mitch MacDonald, Special Assistant U.S. Attorney, United States Courthouse, Boston, MA, for USA, by and through the Air Force, defendant.

## ORDER

SARIS, District Judge.

After reviewing the objections, I adopt the well-reasoned Report and Recommendation Regarding Defendant's Motion for Summary Judgment (Docket No. 10) dated April 16, 1999, and assume familiarity with that opinion.

I add a concern regarding the finding of a willful violation of the Buy America Act, 41 U.S.C. § 10b (West Supp.1998). In his memorandum setting forth the reasons justifying debarment, the debarring official found:

> A preponderance of the evidence establishes that [Glazer Construction Co., Inc.'s] violation of the Buy American Act constituted a willful violation of its contract with the Air Force. As such, the violation provides a basis for its debarment pursuant to FAR 9.406–2(b)(1).

(Finding 2, Docket 13, Tab 29, at 5). Earlier in the memorandum, he had stated that "an intentional violation of the Buy America Act was not conclusively established." (*Id.* at 4.)

Plaintiffs contend that fundamental fairness required an adjudicative hearing on the willfulness finding, not just an informal meeting, because there was a disputed fact question as to intent. Plaintiffs submitted materials to the agency for the administrative record to support the claim that they did not intend any violation of the Act and that any use of foreign wall base and light bulbs was "totally inadvertent." Plaintiffs also asserted that they misapprehended the "fifty percent rule"

with respect to the structural steel used in the project.

Because willfulness is an "element" of this debarment ground, there was a genuine dispute over a material fact that afforded the contractor a more formal proceeding to be consistent with fundamental fairness pursuant to the Federal Acquisition Regulation (FAR), 48 C.F.R. § 9.406–3(b)(2) (1995).[1] *See Sterlingwear of Boston, Inc. v. United States*, 11 Cl.Ct. 879, 889 (1987) (remanding for a hearing where a debarring official failed to recognize material issues of fact on willfulness). *See generally Imco, Inc. v. United States*, 97 F.3d 1422, 1427 (Fed.Cir.1996) (holding that the "process due a contractor facing a proposed debarment" is satisfied by the procedures set out at section 9.406); *cf. Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C.Cir.1993) (holding that a contractor has "a liberty interest in avoiding damage to its reputation and business caused by a stigmatizing suspension.").

The government argues that plaintiffs only requested an informal meeting and that therefore they are not entitled to a more formal adjudicative proceeding. Generally speaking, the failure to request an adjudicative hearing could be deemed a waiver. However, here the magistrate judge correctly pointed out that there was inadequate notice of the willfulness charge, which carries a serious stigma because of the intent element. (Report and Recommendation at 19). Even apart from the procedural concerns about the lack of fair notice and an adequate hearing, the ultimate finding of willfulness appears to be at odds with the prior statement that an in-tentional violation of the Buy America Act had not been established.

■ Even though the willfulness finding was made in violation of the FAR, I agree with the magistrate judge on the alternative ground of debarment. The undisputed facts (including Glazer's false and inconsistent statements about the wall base) reasonably supported debarment on the ground that there was a violation of the Buy America Act. Regardless of whether the debarment is mandatory,[2] as the magistrate judge had concluded, the agency was not arbitrary or capricious in concluding that plaintiffs' conduct was of "so serious and compelling a nature" that it affected their "present responsibility" as a government contractor. *See* FAR § 9.406–2(c).

### ORDER

The Court orders entry of judgment in favor of defendant.

### REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 10)

KAROL, United States Magistrate Judge.

This case has been referred to me pursuant to 28 U.S.C. § 636(b) for my Report and Recommendation on Defendant's Motion for Summary Judgment (Docket No. 10). Plaintiffs, Murray Glazer and Glazer Construction Company, seek review under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* (West 1996) ("APA"), of Defendant United States' decision to debar them for three years from receiving federal contracts for violations of the Buy

---

1. Section 9.406–3(b)(2) provides: "In actions not based upon a conviction or civil judgment, if it is found that the contractor's submission in opposition raises a genuine dispute over facts material to the proposed debarment, agencies shall also (i) Afford the contractor an opportunity to appear with counsel, submit documentary evidence, present witnesses, and confront any person the agen-cy presents." The contractor is also entitled to a transcribed record of the proceedings. *See id.*

2. I need not address this objection because the agency determination as to present responsibility was not arbitrary and capricious under the FAR.

American Act, 41 U.S.C. § 10b (West Supp.1998) ("BAA"). Plaintiffs allege that the procedures under which they were debarred denied them due process of law, *Verified Complaint,* ¶¶ 73, 75, and further claim that Defendant's decision to debar them was "arbitrary and capricious, unsupported by the evidence, constituted an abuse of discretion and was based upon a substantive mistake of law." *Id.* at ¶¶ 76–77.

The crux of Plaintiffs' complaint is that Defendant unfairly denied them an evidentiary hearing under applicable agency rules when its debarring official determined that there was no genuine issue of fact material to the alleged violations of the Act. Plaintiffs further claim that, even if the court finds that it was proper to forego the evidentiary hearing, debarment was arbitrary and capricious where their BAA violations were both relatively minor and unintentional.

For reasons discussed below, I conclude that the BAA affords the government no discretion once it has found a violation of the Act. Because there was clearly a BAA violation in this case, debarment was the only appropriate result. Even if, despite the seemingly mandatory and self-executing language of the statute, debarment is a discretionary remedy, the arbitrary and capricious standard of review that the APA dictates is highly deferential to agency decisions. At least one of Defendant's two offered grounds for debarment plainly satisfies that standard. I therefore recommend that summary judgment enter in favor of Defendant.

## I. Background

### A. The Buy American Act

The BAA requires that every federal construction contract contain a provision that the contractor will use "only such unmanufactured articles, materials, and supplies as have been mined or produced in the United States, and only such manufactured articles, materials, and supplies as have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured ... in the United States." 41 U.S.C. § 10b(a). If the head of a contracting federal agency finds that a contractor has violated this provision, the BAA requires that he:

> make public his findings, including the name of the contractor obligated under such contract, and no other contract for construction, alteration or repair of any ... public work ... shall be awarded to such contractor ... within a period of three years after such finding is made public.

41 U.S.C. § 10b(b).

### B. The Regulatory Framework

The Federal Acquisition Regulations ("FAR"), promulgated jointly by the Department of Defense, the General Services Administration, and the National Aeronautics and Space Administration, implement the requirements of the BAA. 48 C.F.R. subparts 1 & 25.2. These regulations define certain statutory terms as well as procedures and remedies in the event of noncompliance. *Id.*

FAR 25.202 states, subject to exceptions not applicable here: "The Buy American Act requires that only domestic construction materials be used in construction in the United States." An unmanufactured construction material is a "domestic construction material" within the meaning of the rule if it has been mined or produced in the United States. FAR 25.201. A manufactured construction material is a "domestic construction material" only if it has been manufactured in the United States *and* if "the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components." *Id.*[1] The provi-

---

1. This so-called "50 percent requirement" presumably gives content to the BAA's re-

quirement that manufactured items consist of

sion goes on to state that "in determining whether a construction material is domestic, only the construction material and its components shall be considered." "Components" are those "articles, materials, and supplies incorporated directly into the construction materials." *Id.*

When an investigation reveals that a contractor has used foreign construction materials without authorization, 'the contracting officer is required, in "sufficiently serious" instances of noncompliance, to "consider exercising appropriate contractual remedies, such as terminating the contract for default"; and also to "consider preparing and forwarding a report for suspension and/or debarment, including findings and supporting evidence in accordance with [48 C.F.R.] subpart 9.4, Debarment, Suspension, and Ineligibility." FAR 25.206(c)(4).

The FAR's debarment provisions provide the causes for debarment and the procedures to be followed in debarment proceedings by covered contracting agencies. FAR 9.406. The relevant causes for which a debarring official may debar under FAR 9.406-2(b) include the "violation of the terms of a Government contract ... so serious as to justify debarment, such as willful failure to perform in accordance with the terms of one or more contracts ..." and "[a]ny other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor...." FAR 9.406-2(b)(1)(i)(A) & (c).

The FAR further requires agencies to establish procedures governing the debarment process that are as "informal as is practicable" and "consistent with principles of fundamental fairness." FAR 9.406-3(b). Under these procedures, the contracting agency provides notice of a "proposed debarment" to the contractor, alerting it to the conduct for which debarment is being considered. FAR 9.406-

3(c)(1)–(3). The notice to debar must also inform the contractor that it may "submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment, including any additional specific information that raises a genuine dispute over the material facts." *Id.* at (4).

If the debarring official finds no genuine dispute over material facts, he makes a decision on the basis of all the information in the administrative record, including submissions in opposition to debarment made by the contractor. FAR 9.406-3(d). If, however, the debarring official finds that disputed issues of fact material to the proposed debarment exist, he must afford the contractor an opportunity to appear at a more formal proceeding. This proceeding includes opportunities for the contractor to appear with counsel, submit documentary evidence, present witnesses and to cross-examine the agency's witnesses, all on the record. FAR 9.406-3(b)(2). Upon conclusion of this hearing, the debarring official makes written findings of fact, and bases his debarment decision on those facts, together with the rest of the administrative record. FAR 9.406-3(d)(2)(i). In all instances, the cause(s) for debarment must be established by a preponderance of the evidence. FAR 9.406-3(d)(3). The Federal Circuit has held that these procedures, when properly applied, provide the process due a contractor facing a possible debarment. *Imco, Inc. v. United States,* 97 F.3d 1422, 1427 (Fed.Cir.1996).

### C. Background[2]

Defendant, through the Department of the Air Force, awarded Plaintiffs a contract in April 1997 for the construction of an elevator at Hanscom Air Force Base ("Hanscom"). Pursuant to both the BAA and FAR 25.207(a), the contract incorporated by reference a clause setting forth the parties' obligations under the BAA. Contract F19650-97-B-0006, p. 11 (incor-

"substantially all" domestic material. *See* 41 U.S.C. § 10a.

2. Facts are undisputed unless otherwise stated.

porating FAR 52.225–5); Administrative Record ("A.R."), Tab 1.

In December 1997, during an inspection near the end of the construction process, Defendant found Canadian light bulbs and wall base "being installed" on the project, and directed Glazer to comply with the contract's BAA clause by removing "the non-domestic material" from the site. Letter of Dec. 2, 1997, A.R., Tab 2. Glazer claimed in reply that wall base matching the contract's specifications was not available domestically. Defendant's Contract Specialist, Senior Airman Brian MacLean ("MacLean"), after conferring with suppliers, informed Glazer that there was an American source for the base. A.R., Tab 4. Glazer subsequently obtained and installed a domestic base. A.R., Tab 22.

A second inspection revealed that Canadian steel had been used in the elevator doors and frames. A.R., Tab 5. During a third inspection, MacLean and other of Defendant's employees noticed steel samples labeled 'Made in Canada' near a trash dumpster on the site. MacLean states that he inquired of a Glazer supervisor whether the steel in the dumpsters was the same steel as was being used on the project. The supervisor stated that he believed it was. A.R., Tab 8. Defendant sent a second letter to Glazer, notifying him of these further possible violations of the BAA and requesting an immediate response. Letter of Dec. 4, 1997, A.R., Tab 6.

The following day, Glazer wrote to MacLean. Glazer explained that the steel angles found near the dumpster were not installed and were being discarded because Glazer "found them to be not manufactured domestically." Letter of Dec. 5, 1997, A.R., Tab 7. Mill certificates Glazer provided along with his explanation, however, showed that at least some of the steel angles delivered to Plaintiffs' supplier were of Canadian origin. Glazer also explained that: (1) the wall base, made by an American company, had been "inadvertently shipped in a package marked 'Made in Canada' in error"; and (2) that he was in the process of obtaining domestic light bulbs. *Id.*

With respect to the elevator frames and doors, Glazer claimed that the "value of the assembly and distribution [of the frames and doors] exceeds 50% of the value of the end product thereby placing it in compliance with the [BAA]." *Id.* Glazer also stated in his letter that "if it is determined that I am in violation of the [BAA], it was not done knowingly, willfully or fraudulently." *Id.* In an internal memorandum, MacLean recommended further review of these possible violations based on his belief that Glazer was "not being completely truthful with the government." Memorandum of Dec. 5, 1997, A.R., Tab 8.

Between January 5 and January 7, 1998, MacLean reports having had two conversations with Michael Bartoloni, one of Plaintiffs' suppliers. MacLean's memoranda record that Bartoloni told MacLean that Glazer knew that the Canadian doors and frames were less expensive than their domestic equivalents and that Glazer specifically ordered them in the interests of time. MacLean also recorded later receiving a call from Glazer, who was annoyed that MacLean had called Bartoloni directly. MacLean states that his later attempts to obtain information from Bartoloni were unsuccessful because Glazer had told Bartoloni not to cooperate with the government. Memorandum of Jan. 7, 1998, A.R., Tab 15.

In extensive correspondence between December 1997 and January 1998, Plaintiffs stood by their position that the steel angles and the steel doors and frames qualified as "domestic construction material" under FAR 25.201. As to the angles, Glazer claimed that the cost of labor involved in manufacturing them locally ("*i.e.,* cutting to size, drilling holes, applying clips, coping, notching, welding and priming") should be included in the "cost" of the component for purposes of the 50 percent requirement of FAR 25.201. For ex-

ample, by adding $180.00 of labor to one steel component's value ($51.93), Glazer concluded that the manufactured steel qualified as "domestic construction material." Letter of Jan. 9, 1998; A.R., Tab 16; Letter of Jan. 23, 1998, A.R., Tab 19. Similarly, as to the doors and frames, Glazer contended that the "cost of manufacture exceeds 50 percent of the cost of all components" after local "hardware preparation and welded assembly." Letter of Jan. 13, 1998, A.R., Tab 17; Letter of Jan. 23, 1998, A.R., Tab 19.

Defendant disputed Glazer's calculations under the 50 percent requirement. Defendant noted that the FAR states that "only the values of the components themselves [and not the cost of labor in preparing them for the project] are considered in determining the status of a construction material." Letter of Jan. 21, 1998, A.R., Tab 18.

On February 24, 1998, Defendant notified Glazer of its proposed debarment. As grounds for debarment, Defendant stated that: (1) Plaintiffs used several types of construction materials manufactured in Canada on the Hanscom contract; and (2) Murray Glazer made "false statements" to Defendant concerning the origin of the wall base. A.R., Tab 21. Defendant concluded that Glazer's conduct was "of so serious or compelling a nature that it affects his present responsibility [as a government contractor]," providing a basis for debarment under FAR 9.406–2(c). Defendant also concluded that Glazer Construction Company's violation of the BAA was a violation of its contract with the Air Force, providing a separate basis for debarment under FAR 9.406–2(b)(1)(i). The proposed debarment provided Plaintiffs an opportunity to respond within 30 days and informed them that their submission, if any, "should include any specific information that may raise a genuine dispute over material facts." A.R., Tab 21. The proposal further stated that debarment was a "discretionary decision." *Id.*

In their March 9, 1998 response, Plaintiffs reiterated the position they had taken concerning the 50 percent requirement and stressed the unintentional nature of any violation that might have occurred. They also conceded that the light bulbs and wall base were of Canadian origin. A.R., Tab 22 at 2. Plaintiffs requested a meeting in Boston with the debarring official "to address this matter in person." *Id.*

Plaintiffs and their counsel met with the debarring official in Washington, D.C. on April 7, 1998. Before and after this meeting, Plaintiffs introduced into the administrative record additional materials in opposition to the proposed debarment, including a letter from Michael Bartoloni denying many of the statements MacLean attributed to him in the earlier memoranda. A.R., Tab 25. Plaintiffs also provided the debarring official with an outline of a "Buy America" protocol designed to avoid any future violations of the BAA. A.R., Tabs 26 & 28. At no time did Plaintiffs offer any explanation for Glazer's statements to MacLean concerning the wall base.

On May 21, 1998, Defendant notified Plaintiffs by mail of its final decision to bar them from contracting with the United States for three years. A.R., Tab 29. The memorandum in support of debarment summarized Plaintiffs' response to the notice of proposed debarment and analyzed Plaintiffs' defenses. The debarring official rejected Plaintiffs' argument that labor is a component of construction materials for the purposes of the BAA. *Id.* at 4 (citing *S.J. Amoroso Const. Co. v. United States,* 12 F.3d 1072, 1078 (Fed.Cir.1993)). The debarring official also rejected Plaintiffs' claim that the omissions were accidental, noting that negligent violations frustrated Congress' purpose in enacting the BAA—the protection of American labor—as much as intentional violations and, notwithstanding the intent of the act, that it was Plaintiffs' duty under their contract

with Defendant to insure that all materials used complied with the BAA.[3]

As to Glazer's conduct, the debarring official noted that "even though an intentional violation of the Buy American Act was not conclusively established, Glazer made false replies to inquiries about how foreign wall base came to be installed on the project." A.R., Tab 29, at 4. In reaching this conclusion, the debarring official relied solely on Glazer's statements to MacLean as well as MacLean's verification that Glazer's supplier chose to provide foreign wall base.[4] "Glazer's attempts to conceal the facts in this matter demonstrate his disdain for contractual obligations and are indicia of bad faith in his dealings with the United States." *Id.* Defendant then asserted the two bases under FAR 9.406 for which it debarred Plaintiffs. *Id.* at 5 (citing FAR 9.406–2(c) ("present responsibility") & 9.406–2(b)(1)(i)(A) (willful violation of terms of contract with Defendant)).

This APA challenge followed.

## II. Standard of Review

 Under the APA, review by a district court of an agency decision is limited to the question of whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, this court's scope of judicial review is "narrow, highly deferential, and presumes the agency action to be valid." Def.Mem. at 4 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Defendant is correct to suggest that its decision was only arbitrary and capricious if it lacked a rational basis or failed "to consider the relevant factors and articulate[ ] a rational

connection between the facts found and the choice made." Finally, except for conclusions of law, which this court reviews *de novo,* a district court should be hesitant to substitute its judgment for that of the agency. *Associated Fisheries of Maine, Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir. 1997).

## III. Discussion

In a case alleging abuse of discretion under the BAA's regulatory framework, the most logical point of departure is the BAA itself. Curiously, despite the parties' assumptions that debarment is a discretionary remedy, the BAA appears to afford the government no discretion whatsoever in the face of a violation.[5] Upon discovering that a contractor has failed to comply with the BAA, the head of an agency "*shall* make public his findings . . . and no other contract for the construction of any public building in the United States or elsewhere shall be awarded to the contractor . . . within a period of three years after such a finding is made public." 41 U.S.C. § 10b(b) (emphasis supplied). Considerable authority suggests that when a statute uses the word "shall", Congress has imposed a mandatory duty upon the subject of the command. *United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"); *Dubois v. United States Dep't of Agric.,* 102 F.3d 1273, 1291 (1st Cir.1996) ("The use of the word "shall" is mandatory, not precatory."); *see* BLACK'S LAW DICTIONARY 1233 (5th ed. 1979) ("As used in statutes . . .

---

3. Defendant also rejected Plaintiffs proposed "Buy America" protocol as inadequate.

4. The debarring official did not rely on MacLean's conversation with Bartoloni concerning Plaintiffs' desire to use less expensive materials.

5. When alerted at oral argument to the court's understanding of the mandatory, self-executing nature of the BAA, Defendant took no position as to whether BAA violations require debarment. In its brief, Defendant understands debarment to be a discretionary measure. Def.Mem. at 14, 18–19. Plaintiffs consistently assert that debarment is discretionary.

[shall] is generally imperative or mandatory."). Not only does the statute appear to be mandatory with respect to the publication of the government's finding, it also appears to be self-executing at that point with respect to debarment. There are no steps for the agency head to take. Once he determines that a violation has occurred and publishes his finding, "no other contract ... shall be awarded" for a period of three years. 41 U.S.C. § 10b(b).

One commentator offers the BAA as a classic example of early statutes that mandate debarment for contractual improprieties. Brian D. Shannon, *Debarment and Suspension Revisited, Fewer Eggs in the Basket?*, 44 CATH.U.L.REV. 363, 431 (1995):[6] The Administrative Conference of the United States ("ACUS") has twice recommended to Congress that it amend the absolute debarment penalties of such statutes as the BAA. Shannon, *supra*, at 433 n. 353. Most recently, in 1995, after considering Professor Shannon's article, the ACUS recommended that:

> Congress should ordinarily refrain from limiting agencies' discretion by mandating suspensions, debarments or fixed periods of suspension and debarment. Congress should also review existing laws that mandate suspensions, debarments, and fixed periods, to determine whether to amend the provisions to permit agency discretion to make such determinations.

*Id.* at 434 n. 357 (citing ACUS Recommendation 95–2; adopted Jan. 19, 1995, at V).

Set against the BAA's seemingly mandatory language is a regulatory structure that affords considerable discretion. FAR subpart 25.2, which implements the BAA, directs that *if* non-compliance is "sufficiently serious," the contracting officer[7] must "*consider* preparing and forwarding a report for suspension and debarment in accordance with subpart 9.4, Debarment, Suspension and Ineligibility." FAR 25.206(c)(4) (emphasis supplied). Moreover, several of FAR subpart 9.4's provisions suggest that debarment is not mandatory at all but lies within the discretion of the debarring official to protect the United States in its dealings with contractors. *See, e.g.,* FAR 9.406–2(b)(1) ("The debarring official *may* debar a contractor, based upon a preponderance of the evidence, for violation of the terms of a Government contractor ... *so serious* as to justify debarment.") (emphasis supplied); FAR 9.406–1(a) ("The existence of a cause for debarment, however, does not necessarily require that the person be disbarred; the seriousness of the contractor's acts or omissions and any remedial measures or mitigating factors shall be considered in making any debarment decision.").

Subpart 25.2 is difficult to reconcile with its parent statute. First, FAR 25.206(c) explicitly vests in the *contracting officer* discretion to determine whether BAA non-compliance is sufficiently serious to refer to the debarring official.[8] Moreover, al-

---

6. Several other early labor standards statutes contain specific debarment provisions, some of which are mandatory. *Compare* Davis–Bacon Act of 1931, 40 U.S.C. § 276a–2(a) (West 1986) ("No contract shall be awarded ... until three years have elapsed ...") *with* Walsh–Healey Act of 1936, 41 U.S.C. § 37 (West 1987) ("Unless the Secretary of Labor otherwise recommends, no contract shall be awarded ..."); Contract Work Hours and Safety Standards Act of 1962, 40 U.S.C. § 333(d)(1)–(2) (West 1986) (authorizing debarment in cases of "repeated willful or grossly negligent violations").

7. The contracting officer is not the debarring official. As subpart 25.2 indicates, the con-

tracting officer refers instances of noncompliance in individual contracts to the debarring official for suspension and/or debarment proceedings. The debarring official is a senior agency representative, designated by the head of that agency to preside over debarment proceedings. The Air Force's debarring official is the Assistant General Counsel for Contractor Responsibility. Defense Federal Acquisition Regulation Supplement, 48 C.F.R. § 209.403(1).

8. As neither party briefed or argued the issue, I need not determine whether the contracting officer's (as distinguished from the debarring official's) exercise of that discretion is subject to judicial review. Nor do I express any

though the subpart makes no further reference to debarment, it incorporates by reference a discretionary debarment framework (subpart 9.4) into a seemingly mandatory and self-executing statute. There would be serious separation of powers concerns if an executive official (in this case, the Secretary of Defense) promulgated regulations affording discretion where Congress intended that there be none. *See Train v. City of New York*, 420 U.S. 35, 40, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975) (Administrator of Environmental Protection Agency not permitted to withhold appropriated funds where statute stated funds "shall be allotted").

■ Perhaps one way to reconcile the BAA with the FAR is to assume that subpart 25.2 only incorporates the procedures by which debarment proceedings are to be conducted and that it does not incorporate the discretionary elements of subpart 9.4 debarments. It is also conceivable that the promulgators of subpart 25.2 simply erred in incorporating subpart 9.4 into the BAA framework. Rather than adopt either of these strained interpretations of the regulations, however, I conclude that the language of the BAA "is plain and admits of no more than one meaning." *Beliveau v. United States Dep't of Labor*, 170 F.3d 83, 86 (1st Cir.1999) (citing *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 857–58 (1st Cir.1998)). In such a case, "the duty of interpretation does not arise, and the sole function of the courts is to enforce the statute according to its terms." *Id.* at 86.

■ The terms of the BAA call for a three-year debarment when an agency head determines that a violation of the BAA has taken place. It is undisputed that the wall base Plaintiffs used on the project was Canadian in origin. The use of a non-domestic construction material without prior approval plainly violates the BAA. Debarment for three years was thus the only appropriate sanction.[9]

Without a doubt, the sanction that Plaintiffs suffered is a harsh one. Yet the language of the statute is quite clear. For this court to read it otherwise simply because the BAA appears to be somewhat Draconian would give content to Justice Holmes' maxim that hard cases make bad law. *See Northern Secs. Co. v. United States*, 193 U.S. 197, 364, 24 S.Ct. 436, 48 L.Ed. 679 (1904) (Holmes, J., concurring). Congress affords the remedy for a statute that has arguably outlived its useful purpose. *See* Shannon, *supra*, at 433 n. 353. I therefore recommend that summary judgment enter in favor of Defendant.

I acknowledge, however, as both parties observed at oral argument, that there is a dearth of case law interpreting the BAA. I also acknowledge the possibility that my interpretations of the act and its peculiar statutory-regulatory interplay are incorrect. Nevertheless, even if my reading is incorrect, and, despite the plain language of the statute, debarment is a discretion-

opinion as to whether the debarring official, upon receiving a report forwarded by the contracting officer, has discretion to decline to pursue an investigation and make the finding that is necessary to trigger the self-executing aspect of § 10(b)b. Finally, I express no opinion as to whether, assuming such discretion exists, either at the level of the contracting officer or the debarring official, the decision by that individual would constitute "final agency action" subject to judicial review under the APA. 5 U.S.C. § 704 (West 1996). In this case, the debarring official did make public his findings, and thus would appear to have triggered the self-executing debarment provision of the BAA.

9. The two administrative decisions upon which Plaintiffs rely for the proposition that the BAA admits of some discretion are in conflict with the plain language of the statute and devoid of reasoning. *See In re Secretary of the Interior*, 42 Comp.Gen. 401 (1963); *In re Administrator, Veterans Administration*, 36 Comp.Gen. 718 (1957). I afford them no weight in this context. *See Cleveland Telecomms. Corp. v. Goldin*, 43 F.3d 655, 658 n. 1 (Fed.Cir.1994) ("Decisions of the Comptroller General are not precedents that are binding on this court. However, we may look to them for guidance when they are reasonable and in conformance with law....").

ary action, the result here must still stand. For reasons presented below, upon reviewing the administrative record before the debarring official, I cannot say that his decision to debar on the basis of Plaintiffs' present responsibility as government contractors was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

The debarring official barred Plaintiffs on two separate grounds: (1) their "willful failure" to perform in accordance with the terms of their contract with the Air Force, FAR 9.406–2(b)(1)(i)(A); and (2) Murray Glazer's conduct was of "so serious and compelling a nature" that it affected his "present responsibility" as a government contractor. FAR 9.406–2(c); A.R., Tab 29. Plaintiffs' counsel conceded at oral argument that if there is a rational basis in the administrative record for debarment on either of these grounds, I must uphold the debarring official's decision. *See Checkosky v. SEC*, 23 F.3d 452, 460 (D.C.Cir. 1994) ("Obviously, we cannot hold an agency's action unlawful if one of two alternative grounds is an acceptable basis to justify that action."); *Franklin Savings Assoc. v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1142 (10th Cir.1991) (determination that agency correctly found any one of three statutory grounds for appointment of conservator sufficient to uphold appointment).

*Present Responsibility*

■ It is undisputed that when Defendant confronted Murray Glazer with the fact that he had installed Canadian wall base, Glazer first replied that the wall base was not available domestically. A.R., Tab 5. After being informed that American wall base was indeed available, Glazer responded that domestic wall base had been "inadvertently ... shipped in a package marked made in Canada in error." A.R., Tab 7.

That Glazer ultimately installed domestic wall base demonstrates that his first response to the government's inquiry was ignorant at best and intended to mislead at worst. Either of these states of mind supports a finding of present irresponsibility. The government, through its debarring official, could reasonably decline to do business with a contractor who makes excuses in the face of possible contract violations without first checking into their accuracy.

Similarly, Glazer's second response is both wrong (as he now concedes) and logically inconsistent with his first. If Glazer honestly believed that the wall base was "inadvertently shipped" in "Made in Canada" packaging, he cannot have honestly believed that there was no domestic source for the wall base. Again, Defendant could reasonably decline to do business with contractors whose at best inconsistent responses suggested "disdain" for their "contractual obligations." *Notice of Debarment*, A.R., Tab 24, at 4–5.[10]

On Glazer's representations alone, Defendant could reasonably determine that Plaintiffs' conduct was of so serious or compelling a nature so as to affect their present responsibility as government contractors. Whether or not Glazer intended to mislead Defendant is thus not material to the proposed ground for debarment. Where there is no genuine issue of fact material to the proposed debarment, Defendant is under no obligation to afford a formal evidentiary hearing to a contractor. FAR 9.406–3(c). Thus, at least with respect to the question of Plaintiffs' present responsibility, Plaintiffs cannot complain that they did not receive an evidentiary hearing on the question of intent.

"If a cause for debarment exists, the contractor has the burden of demonstrating, to the satisfaction of the debarring official, its present responsibility and that debarment is not necessary." FAR 9.406–1(a). In reaching his conclusion as to present irresponsibility, the debarring offi-

---

10. It bears mention Plaintiffs' position before this court—that Glazer's responses were simply knee-jerk reactions to surprising information—is inconsistent with both of his previous positions.

cial was therefore also free to consider Plaintiffs' failure to respond directly to the government's statement in its notice of proposed debarment that Glazer had made "false statements." A.R., Tab 21. Similarly, the debarring official's lack of confidence in Plaintiffs' proposed remedial measures could also quite reasonably affect its view of Plaintiffs' present responsibility. *See* 9.406–1(a)(10) (debarring official may properly consider "whether the contractor's management recognizes and understands the seriousness of the misconduct giving rise to the cause for debarment and has implemented programs to prevent recurrence.").

In sum, three factors unaffected by issues of a factual nature justify the debarring official's determination of present irresponsibility without an evidentiary hearing. First, Murray Glazer made either false or uninformed responses to a contracting officer's inquiry into the use of a non-complying material. Second, Plaintiffs failed to meet their burden under the FAR and dispute the debarring official's proposed finding that those statements were false. Third, the debarring official was dissatisfied with Plaintiffs' proposed programs to prevent recurrence of violations. On the evidence in the administrative record, it was therefore not arbitrary and capricious for the debarring officer to conclude that Plaintiffs' conduct was of so serious or compelling a nature as to affect their present responsibility as government contractors. In fact, were I to review this ground for debarment *de novo*, I would conclude that it was quite reasonable to question Plaintiffs' present responsibility. This finding provides an ample alternative basis to recommend the entry of summary judgment against Plaintiffs.

*Willful Violation*

The second ground for debarment was Plaintiffs' "willful failure to perform in accordance with the terms of their contract with the government." Here, willfulness is an "element" of the debarment ground.[11] As I suggested above, there is some evidence in the record to support a finding that Glazer willfully violated the act with respect to the wall base. At the same time, Plaintiffs did state in response to the government's notice of proposed debarment that they did not intend any violation of the BAA that might ultimately be found. A.R., Tab 22. Moreover, the notice of proposed debarment did not specify that one of the grounds for Plaintiffs' debarment was a "willful failure" to comply with the terms of their contract. *See supra* note 8. Plaintiffs did not, but certainly could have argued that they were denied notice of the need to address the question of willfulness.

Under these circumstances, it is a close question whether Plaintiffs' bare assertion that they did not intend any violation in and of itself required a factfinder to observe Glazer's demeanor at an evidentiary hearing, or whether Plaintiffs had to provide some sort of explanation for Glazer's communications to merit the hearing. It is also a close question that I need not address where the undisputed facts reasonably supported debarment on the basis of Plaintiffs' present responsibility.

I conclude then by addressing four arguments Plaintiffs set forth in opposition to summary judgment: first, that the steel angles and doors did not violate the act where the cost of labor in assembling them should properly have been included in the BAA's 50 percent calculation; second, that

---

**11.** The government originally proposed debarment only on the basis of FAR 9.406–3(b)(1)(i). That provision permits debarment for "[v]iolation of the terms of a Government contract or subcontract so serious as to justify debarment," with no mention of willfulness. "Willful failure," the conduct on which the government ultimately debarred, is only an example of the type of conduct that is so serious as to justify debarment under FAR 9.406–3(b)(1)(i). *See id.* at 3(b)(1)(i)(A). Nevertheless, Defendant's conduct must be assessed with respect to the theory that it did proceed under and not the theory that it could have proceeded under.

the BAA prohibits only knowing or intentional violations of its terms; third, that the wall base and light bulbs did not violate the BAA where Plaintiffs removed them before Defendant accepted the completed contract; and fourth, that debarment based upon de minimis violations of the BAA is unduly harsh. Each of these arguments is either irrelevant, incorrect, or both.

### A. Labor and the Fifty Percent Requirement

■ Plaintiffs' interpretation of the 50 percent requirement is only relevant to whether the use of the steel and steel doors and angles violated the BAA. Where I have concluded that debarment was permissible solely on the basis of the non-complying wall base and Glazer's false or uninformed statements, it is irrelevant whether or not the steel components violated the BAA. In any event, Plaintiffs' interpretation of the 50 percent requirement is flawed for the reasons set forth in the Claims Court's decision in *Amoroso v. United States* and the Federal Circuit opinion affirming it. 26 Cl.Ct. 759, 772 (1992), *aff'd*, 12 F.3d at 1078.

Under the FAR, the cost of labor is only properly included in the cost of all of the components of a construction material if labor is a "component." "Components" are "articles, materials or supplies incorporated *directly* into construction materials." FAR 25.201 (emphasis supplied). As both *Amoroso* courts and an array of administrative decisions have held, labor is not an article, material or supply incorporated *directly* into a construction material. Placing labor on par with other components of the manufacturing process—rivets, hinges, locks, and primer, for example—is inconsistent with the language of the BAA, which requires that manufactured components be "substantially all from articles, materials, or supplies *mined, produced, or manufactured* ... in the United States...." 41 U.S.C. § 10b(a) (emphasis supplied). If labor is a component of a

finished piece, so too would be other traditionally "indirect" costs of production, such as advertising, administration, and research and development. I therefore agree with the debarring official's conclusion that the steel and steel doors and angles did not satisfy the BAA's 50 percent requirement.

### B. Must BAA Violations Be Intentional?

The debarring official concluded that it was of no moment whether Plaintiffs' use of foreign materials was unintentional:

> Negligent violations thwart Congress' intent to protect U.S. jobs and manufacturing just as effectively as intentional violations. Further, since it was part of [Plaintiffs'] contract, it was incumbent upon them to know and fulfill that duty. It was their responsibility to insure that their suppliers and subcontractors provided compliant materials.

A.R., Tab 29.

■ The BAA's legislative history gives little sense that negligent contractors were the irresponsible constituency that Congress feared. Rather, the Act seems to have been designed to keep foreign firms from underbidding American contractors for public works projects, and to keep the government from contracting with those less expensive foreign firms. 76 Cong.Rec. 3175 (1933). Nevertheless, Congress was and remains perfectly capable of including a statutory "element" of willfulness. *See* 10 U.S.C. 2410f ("intentional" inclusion of false 'Made in America' label grounds for debarment). Absent some indication that Congress intended to include a scienter requirement in the BAA, I will not now include one.

In any event, Plaintiffs plainly would meet the scienter requirement they claim to find in the BAA. Glazer's second response to Defendant concerning the wall base—that domestic wall base had inadvertently been mismarked—shows that he knew (or at least should have known) of

the existence of domestic source for the wall base when he claimed that there was no such source.

### C. Replacement of Non–Complying Items

■ Plaintiffs averred at oral argument that "a violation of the [BAA] is not established if the non-conforming item is changed before acceptance of the project." *See* March 22, 1999 Letter to Court from Plaintiffs' Counsel, Docket No. 20. On this theory, Plaintiffs' replacement of the light bulbs and wall base after being notified by Defendant brought Plaintiffs into BAA compliance with respect to those items. This argument is without merit. The BAA would have no force or effect if violating contractors could replace infringing components upon discovery with no adverse consequence. Plaintiffs' theory would encourage contractors opportunistically to employ non-conforming items in hopes that they would not be detected. Although the regulations authorize removal and replacement of non-conforming items where practicable, or retention of such materials where impracticable, that authorization does not "affect the Government's right to suspend and/or debar a contractor...." FAR 25.206(c)(3).

### D. De Minimis Violations

■ Finally, Plaintiffs repeatedly appeal to the court's sense of fairness, noting that the value of the materials in violation of the BAA amounted to only ".01% of the materials used in the construction project." *Complaint* at ¶ 10; Pl.Mem. at 1. This de minimis appeal is flawed.

First and foremost, the BAA already incorporates a de minimis exception. The Act's provisions only apply to contracts valued in excess of $2,500. 41 U.S.C. § 10a(a) (incorporating "micropurchase threshold" of 41 U.S.C. § 428). By its

terms, the BAA only exempts contracts the total amount of which is below the micropurchase threshold of $2,500. The value of particular non-conforming materials is irrelevant. Moreover, if a contractor is willing to risk violating the statute to save cost on relatively inexpensive materials, it seems as likely (if not more likely) that he would take identical risks with larger and more expensive components of a project. Reading a de minimis exception into the BAA would create an "enforcement gap" through which all but the most significant contract components would fall.[12]

### IV. Conclusion

For all of the foregoing reasons, I recommend that summary judgment enter in favor of Defendant.

### V. IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to

---

12. Plaintiffs' claim of punitive debarment possesses little merit. The case upon which they rely expressed doubt "that any debarment within the three-year guideline established in the regulations ... could present a case sufficiently punitive" to make the proceeding criminal in nature. *United States v. Hatfield,* 108 F.3d 67, 70 (4th Cir.1997).

this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).

April 16, 1999.