MED TRENDS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–712 C.

United States Court of Federal Claims.

Nov. 30, 2011.

Cyrus E. Phillips, IV, with whom was David A. Oblon, Arlington, VA, for plaintiff.

Christopher A. Bowen, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Washington, DC, for defendant.

## OPINION AND ORDER

BUSH, Judge.

MED Trends, Inc. (MED Trends) filed its pre-award bid protest complaint on October 27, 2011. In its complaint, MED Trends challenges the procurement of a task order,

Performance Work Statement Number TAC–12–03198 (PWS), under the Transformation Twenty–One Total Technology (T4) Multiple–Award Contract by the United States Department of Veterans Affairs (VA). MED Trends argues that the procurement of these requirements under the T4 Multiple–Award Contract, and the alleged failure of the VA to limit the competition for these requirements to service-disabled veteran-owned small business concerns (SDVOSBs), violate applicable statutes and regulations.

Now before the court are MED Trends' motions for preliminary injunctions and defendant's motion to dismiss. For the reasons discussed below, the court concludes that it is without jurisdiction over the claims set forth in the complaint. Accordingly, defendant's motion to dismiss the bid protest complaint is granted, and MED Trends' motions for injunctive relief are denied as moot.

## BACKGROUND

### I. Factual Background

In its complaint, MED Trends asserts that this bid protest is concerned with unreasonable governmental action, as well as statutory and regulatory violations, in connection with a task order under the T4 program. *See* Compl. ¶ 1 (noting that the procurement at issue is the PWS). The VA issued the solicitation for the T4 Multiple–Award Contract, designated as Solicitation No. VA118–10–RP–0052, on July 26, 2010. Def.'s Mot. Ex. 1 at AR317. The solicitation stated that the T4 contracts would be five-year indefinite delivery, indefinite quantity (IDIQ) multiple-award contracts. *Id.* at AR328. Pursuant to task orders to be issued under the T4 master contracts, contractors would provide information technology (IT) services to the VA and other related federal agencies. *Id.* at AR327.

As noted by plaintiff, the competition for the T4 master contracts was not limited to SDVOSBs. Indeed, the solicitation for the contracts indicated that as many as eight of the fifteen master contracts might be award-ed to businesses not owned by veterans. *See id.* at AR414. However, the solicitation also stated that some of the task orders under the master contracts might be set aside for small business concerns. *See id.* at AR351, AR367.

The VA awarded fifteen T4 contracts on June 30, 2011, *id.* at AR2683, and plaintiff was not one of the awardees. Representatives from MED Trends attended the industry day for the T4 contract competition, *id.* at AR70, and had a private meeting with the contracting officer (CO) and a VA attorney, *id.* at AR85, but it is not clear whether plaintiff submitted a bid as a prime contractor.[1]

On October 7, 2011, the VA issued the disputed PWS, the procurement challenged in this case, under the T4 program. Following the commencement of this bid protest, as discussed more fully below, the government elected to set aside the protested task order for SDVOSBs with T4 contracts. *Id.* at AR2683–AR2684. The PWS noted that the successful offeror would provide operations and maintenance support services for the continuing redesign of the Veterans Benefits Management System—Rating (VBMS–R) software, a web-based application designed to assist the VA in processing and rating disability claims submitted by veterans. *Id.* at AR2578.

MED Trends is not a T4 contractor, but it does have a multiple-award contract with the United States General Services Administration (GSA), the Veterans Technology Services Government–Wide Acquisition Contract (VETS GWAC), Contract No. GS–06F–0542Z, which expires in February 2012. Compl. ¶ 3. MED Trends is currently performing Task Order No. VA118–11–F–009 (GWAC task order) for the VA under that contract. Plaintiff's Motion for a Preliminary Injunction (Pl.'s 1st Mot.) ¶ E. The GWAC task order expires on December 12, 2011. *Id.* Under that task order, MED Trends provides IT services related to the VBMS–R software. *Id.*

1. It appears that MED Trends participated as a team member or subcontractor for six separate offerors in the T4 competition. Def.'s Resp. at 5. Three of those offerors were selected as T4 con-tractors, and three were not. *Id.* It is not clear whether MED Trends submitted its own bid to become a prime contractor in the T4 program.

On October 28, 2011—one day after the commencement of this suit—the United States Small Business Administration (SBA) informed MED Trends that it was being suspended from all contracting with the federal government. Def.'s Mot. Ex. 3. In its notice to plaintiff, the SBA explained that MED Trends would be excluded from all contracting with the federal government, and that its name would be placed on the Excluded Parties List System (EPLS). *Id.* The suspension is effective throughout the federal government and was based on the indictment of one of MED Trends' former employees. *Id.* MED Trends was placed on the EPLS on November 2, 2011. Def.'s Mot. Ex. 4.

MED Trends filed an administrative appeal of the suspension with the SBA on November 15, 2011, which had not been resolved as of November 22, 2011. Plaintiff's Second Motion for a Preliminary Injunction (Pl.'s 2d Mot.) ¶ B.

## II. Procedural History

MED Trends filed its complaint in this court on October 27, 2011. Plaintiff did not request injunctive relief at that time. As noted above, plaintiff argues in its bid protest complaint that the government's failure to set aside the requirements at issue in this case for SDVOSBs was unreasonable and contrary to law.

The court held an initial telephonic status conference with counsel for the parties on October 28, 2011. During the teleconference, counsel for defendant stated that the VA had issued requests for information (RFIs) to all T4 contractors in an effort to determine whether the competition for the work contemplated under the PWS might be limited to SDVOSBs or to veteran-owned small business concerns (VOSBs). Upon being informed of the foregoing, counsel for plaintiff stated that "depending on what the [government's] decision is this coming Friday, the 4th of November, if they decide to go forward *other than with a service disabled set-aside,* we'll come back and file a motion for a preliminary injunction." Tr. at 13 (emphasis added). The parties and the court agreed that further substantive proceedings in this case should be suspended until defendant

determined whether to so limit the protested procurement. For that reason, the court issued an order on October 31, 2011 suspending further proceedings in this case pending defendant's decision as to whether the protested procurement would be set aside for SDVOSBs or VOSBs. As noted above, the government has elected to limit the competition for the protested task order to SDVOSBs with a T4 contract. The solicitation for the protested task order, also known as the Request for Task Execution Plan, was issued on November 3, 2011. *See* Def.'s Mot. Ex. 1 at AR2690–AR2692.

The government's decision to set aside the protested task order for SDVOSBs appeared to render moot most—if not all—of the legal arguments set forth in the complaint. Nevertheless, on November 8, 2011, MED Trends filed a motion for a preliminary injunction seeking to enjoin the procurement of the protested task order under the T4 Multiple–Award Contract. The court held a telephonic status conference with counsel for the parties to discuss a briefing schedule for MED Trends' motion. During that conference, counsel for defendant indicated that the VA would voluntarily stay the award of the protested task order until December 1, 2011. Based on that timeline, the court and the parties established an expedited schedule for the briefing of MED Trends' pending motion.

On November 16, 2011, in accordance with the briefing schedule, defendant filed a motion to dismiss the complaint, as well as its response to MED Trends' motion for a preliminary injunction. In its motion to dismiss, defendant argues that plaintiff lacks standing to advance the claims set forth in the complaint and has also waived many of those claims by waiting too long to raise them. In its response to MED Trends' motion for a preliminary injunction, defendant asserts that plaintiff is unlikely to prevail on the merits of its claims and has failed to meet the other requirements for injunctive relief.

On November 21, 2011, plaintiff filed its response to defendant's motion to dismiss and its reply to the government's response. MED Trends asserts that it has standing in this case, that it has not waived any of the

arguments raised in this case, and that it is entitled to the requested injunction.

On November 22, 2011, after the completion of briefing by the parties on MED Trends' initial motion for a preliminary injunction, plaintiff filed a motion for a second preliminary injunction. In that motion, MED Trends requests that the court issue a preliminary injunction enjoining the temporary suspensions issued by the SBA, which have the effect of excluding both plaintiff and its parent company, Jen-esis Communications, Inc. (Jen-esis), from federal contracting for one year.[2] Plaintiff further requests that the court order defendant to remove the names of both plaintiff and Jen-esis from the EPLS.

## DISCUSSION

### I. Bid Protest Jurisdiction

■ This court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2006). The jurisdictional grant is "without regard to whether suit is instituted before or after the contract is awarded." *Id.* As a threshold jurisdictional matter, however, the plaintiff in a bid protest must show that it has standing to bring the suit. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.2003) (*ITAC*); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed.Cir.2002).

### II. Bid Protest Standing

■ In order to establish this court's jurisdiction in a bid protest action, the plaintiff must demonstrate that it has been prejudiced by the alleged errors of procurement officials. *ITAC*, 316 F.3d at 1319 (citing *Am. Fed'n of Gov't Employees v. United States*,

258 F.3d 1294, 1302 (Fed.Cir.2001)). In the absence of such prejudice, this court is without subject matter jurisdiction over the protest, regardless of whether the government's conduct was arbitrary, capricious, or contrary to law. The plaintiff in a bid protest suit must establish that it is an interested party with a direct economic interest in the procurement. *Id.* Bid protest standing is limited to those plaintiffs who are " 'actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.' " *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed.Cir. 2009) (quoting *AFGE*, 258 F.3d at 1302). In the context of a pre-award bid protest, a plaintiff must establish that it has suffered or will suffer a "non-trivial competitive injury which can be addressed by judicial relief." *Id.* at 1362.

### III. MED Trends' Claims

The claims advanced by plaintiff have evolved dramatically during the short course of this litigation. In its complaint, for example, plaintiff argues that the government's failure to set aside the work contemplated under the protested task order for SDVOSBs was contrary to law. In light of defendant's decision to set aside the protested task order for SDVOSBs, however, plaintiff now argues that the decision to limit the competition to SDVOSBs participating under the T4 master contracts is yet again contrary to law. Furthermore, plaintiff argues in its complaint that the procurement at issue here is the task order issued under the T4 program. In its second motion for a preliminary injunction, however, plaintiff now argues that its own task order under the GWAC is the procurement at issue in this case. While the complaint merely states that the competition for the requirements in this case must be set aside for SDVOSBs, the first motion for a preliminary injunction argues that it is not sufficient to limit the competition to

---

2. In its Rule 7.1 Disclosure Statement, plaintiff stated that it had no parent corporation. While it is not clear whether Jen-esis meets the definition of a parent corporation for purposes of Rule 7.1 of the Rules of the United States Court of

Federal Claims (RCFC), plaintiff has not explained the basis for its request that the court issue an injunction removing Jen-esis from the EPLS. Jen-esis is not a party to this suit.

SDVOSBs. Instead, according to plaintiff, the competition must be held open to all SDVOSBs, not just those who possess a T4 contract. Although the claims raised by plaintiff are quite varied and inconsistent in some respects, the court will attempt to accurately summarize and address them as they have been presented to the court.

### A. Claims in the Complaint

In its complaint, MED Trends asserts that its pre-award bid protest does not challenge the competition for a task order. Rather, it challenges the VA's decision to compete these particular requirements as a task order under the T4 program. According to MED Trends, that decision was unreasonable and contrary to law. Notwithstanding MED Trends' assertion that it does not challenge the initial, unrestricted competition for the protested task order or the overall T4 program, the alleged factual basis for the claims set forth in the complaint is that the competition for the T4 master contracts was not set aside for SDVOSBs, and that the competition for the task order—at least at the time the complaint was filed—was not being set aside for SDVOSBs.

MED Trends argues that the work contemplated under the protested task order must be set aside for SDVOSBs under 38 U.S.C. § 8127 (2006), which provides the following:

> **Use of restricted competition.**—Except as provided in subsections (b) and (c), for purposes of meeting the goals under subsection (a), and in accordance with this section, a contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

*Id.* § 8127(d). Section 8127 further provides that bids or offers submitted by small business concerns are to be treated in the following order of priority: (1) SDVOSBs;

(2) VOSBs; and (3) other small business concerns. *Id.* § 8127(i). Based on those provisions, plaintiff now argues that the government was required to set aside the requirements embodied in the protested task order for competition only among SDVOSBs.

MED Trends also argues that the government's failure to set aside the work contemplated under the protested task order for SDVOSBs violates the terms of Federal Acquisition Regulation (FAR) 819.7005(a):

> The contracting officer shall consider SDVOSB set-asides before considering VOSB set-asides. Except as authorized by 813.106, 819.7007 and 819.7008, the contracting officer shall set-aside an acquisition for competition restricted to SDVOSB concerns upon a reasonable expectation that,
>
> (1) Offers will be received from two or more eligible SDVOSB concerns; and
>
> (2) Award will be made at a fair and reasonable price.

48 C.F.R. § 819.7005(a) (2010).

Because MED Trends and at least one of the T4 contractors are SDVOSBs, plaintiff argues in the complaint that the work contemplated under the protested task order was required to be set aside for SDVOSBs. In its complaint, plaintiff does not expressly request injunctive relief, and plaintiff did not submit a motion for a preliminary injunction at that time. MED Trends implicitly seeks such relief, however, in requesting that the court remand the case to the VA with instructions to compete the protested procurement in accordance with the legal provisions that plaintiff claims have been violated here. Plaintiff did not address whether it met the requirements for injunctive relief in its complaint.

### B. Claims in the First Motion for a Preliminary Injunction

Following the commencement of this suit, as noted above, defendant decided to set aside the competition for the protested task order for SDVOSBs with T4 contracts. Plaintiff then filed a motion for a preliminary injunction, arguing that the government's de-

cision to set aside the task order for SDVOSBs with T4 contracts was contrary to law. Specifically, MED Trends argues that task orders under the T4 program "cannot lawfully be set-aside only for [SDVOSBs] because doing so would violate the requirement of 41 U.S.C. § 4106(c) [ (2006) ] that 'all contractors awarded the contracts [Multiple–Award Contracts] shall be provided a fair opportunity to be considered....' " Pl.'s 1st Mot. ¶ B. Based on that argument, MED Trends requests a preliminary injunction to enjoin defendant from proceeding with the protested task order competition under the T4 contract.[3]

Perhaps in recognition that the principal argument in its complaint—that the government was required to set aside the requirements of the protested task order for SDVOSBs—may have been rendered moot by the government's decision to set aside the requirements of the protested task order for SDVOSBs, MED Trends adopts a somewhat different argument in its motion for a preliminary injunction: that the government was not only required to limit the competition to SDVOSBs, but that it was required to compete the requirements of the task order among all SDVOSBs. Under this new argument, any competition for the requirements that did not include plaintiff would be unlawful, even if it was limited to SDVOSBs. *See* Pl.'s 1st Mot. ¶ K ("This Task Order Competition being conducted among the T4 Multiple–Award Contractors is unlawful and in violation of 38 U.S.C. § 8127(d), (i) because Plaintiff MED Trends is not one of the T4 Multiple–Award Contractors."), *id.* ("This Task Order Competition being conducted among the T4 Multiple–Award Contractors is unlawful and in violation of the VAAR, 48 C.F.R. § 819.7005(a) (2010), because Plaintiff MED Trends is not one of the T4 Multiple–Award Contractors."). MED Trends thus requests that the court issue an injunction preventing the VA from proceeding with the procurement of the work contemplated under

the protested task order under the T4 program.

### C. Claims in the Second Motion for a Preliminary Injunction

In its second motion for a preliminary injunction, MED Trends argues that this court has subject matter jurisdiction to review its suspension by the SBA, and requests that the court set aside the suspension and order the removal of its name, as well as the name of its parent company, from the EPLS. In contrast to the complaint, which purports to challenge the government's decision to compete the requirements of the *PWS task order* under the T4 program, the second motion for a preliminary injunction identifies the *GWAC task order* as the "[p]rocurement here in issue." Pl.'s 2d Mot. ¶ A. The SBA suspension was issued subsequent to the commencement of this suit and is therefore not mentioned in the complaint. Plaintiff has not sought to amend its complaint for the purpose of expanding the scope of its bid protest to encompass the suspension.

MED Trends first notes that the government may impose a suspension only to protect federal procurement interests, not to punish government contractors. *See* 48 C.F.R. § 9.402(b) (2010). Plaintiff then explains that its suspension by the SBA was imposed in response to the indictment of a former employee of MED Trends who was terminated in September 2010. The criminal conduct that forms the basis of the indictment, according to plaintiff, must have been known to the SBA when it interviewed other employees of MED Trends about that conduct in June 2010. Because the SBA waited more than a year before suspending MED Trends, and because the government found that plaintiff was presently responsible on almost a dozen separate occasions during that time, plaintiff argues that the suspension

---

3. While plaintiff, as noted above, claims that it does not challenge the T4 program, it nonetheless points out in its initial motion for a preliminary injunction that the competition for the T4 master contracts was not limited to SDVOSBs and that many of the successful offerors in that competition were large businesses. Pl.'s 1st Mot.

¶ B. It appears that plaintiff is a subcontractor for three T4 prime contractors. One of those contractors is an SDVOSB, and two are not. Def.'s Resp. at 5. In fact, plaintiff is a subcontractor under the T4 program for one of the "large businesses" plaintiff identifies in its initial motion. *Id.*

was an arbitrary, capricious, and unlawful punishment.[4]

## IV. Defendant's Motion to Dismiss

Defendant argues that the complaint in this case must be dismissed for several reasons. First, defendant asserts that this court is without jurisdiction over the claims set forth in the complaint because plaintiff cannot establish standing to raise those claims. In that regard, defendant argues that MED Trends is not an interested party with a direct economic interest in the outcome of the procurement because it is excluded from contracting with the federal government; it is not an actual or potential awardee inasmuch as it does not possess a T4 contract; and it has not been injured or harmed by the government's decision to set the task order competition aside for SDVOSBs under the T4 contract.

In addition, defendant further contends that the alleged violations referenced by plaintiff would have been apparent on the face of the solicitation for the T4 master contracts and should have been challenged before bids for those contracts were due. In that regard, defendant first argues that the solicitation for the T4 contracts was clear in stating that not all of those contracts would be set aside for SDVOSBs. Defendant also argues that the T4 contract solicitation stated that the competition for task orders under the contracts might be set aside for small business concerns. Finally, defendant asserts that the requirements of the protested task order fall squarely within the scope of the solicitation for the T4 contract. Because plaintiff failed to raise those alleged violations prior to the closing date for bids under that solicitation, the government argues that any arguments based on those alleged violations have been waived.

For the reasons discussed below, the court agrees that the claims set forth in the complaint—and MED Trends' other claims that should have been set forth in the complaint—must be dismissed for lack of subject matter

jurisdiction. Plaintiff does not have standing to raise those claims, and many of its arguments in support of those claims have been waived. For that reason, defendant's motion to dismiss must be granted.

### A. MED Trends Does Not Have Standing to Challenge the Protested Procurement

■ Defendant argues that this court does not possess subject matter jurisdiction over this bid protest because plaintiff lacks standing to challenge the procurement at issue in this case. The government thus asserts that this suit must be dismissed under RCFC 12(b)(1). Here, MED Trends has failed to demonstrate that it is an interested party with a direct economic interest in the outcome of the protested procurement. For that reason, as discussed below, the court concludes that it is without jurisdiction to hear the claims set forth in MED Trends' complaint.

### 1. MED Trends Cannot Establish that It Has Suffered or Will Suffer a Non-Trivial Competitive Injury Because It Is Excluded from Federal Contracting

As defendant notes—and as plaintiff concedes—MED Trends is barred from all federal contracting due to its recent suspension by the SBA and its placement on the EPLS. MED Trends was suspended from federal contracting by the SBA on October 28, 2011, *see* Def.'s Mot. Ex. 3, and its name was placed on the EPLS on November 2, 2011, *see id.* Ex. 4. The FAR provides that all federal contractors "debarred, suspended, or proposed for debarment are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors, unless the agency head determines that there is a compelling reason for such action." 48 C.F.R. § 9.405(a). The FAR further states that any contractors placed on the EPLS "on the basis of statutory or other regulatory procedures are excluded from re-

---

**4.** The court notes that much of MED Trends' argument related to this court's jurisdiction to review the SBA suspension, and the alleged unlawfulness of that suspension, is contained in

MED Trends' response to defendant's motion to dismiss, rather than in its second motion for a preliminary injunction.

ceiving contracts, and if applicable, subcontracts, under the conditions and for the period set forth in the statute or regulation." 48 C.F.R. § 9.405(b). Finally, it is also clear that plaintiff cannot be awarded the requirements of the protested task order under the VETS GWAC task order because the VA may not "add new work, exercise options, or otherwise extend the duration of current contracts or orders" held by a suspended or debarred contractor without approval of the agency head. 48 C.F.R. § 9.405–1(b)(3).

For the foregoing reasons, plaintiff cannot demonstrate that it has suffered or will suffer a non-trivial competitive injury as a result of the legal violations alleged by plaintiff.[5] For the reasons discussed in section IV.C. below, moreover, MED Trends' temporary suspension by the SBA and the subsequent placement of its name on the EPLS cannot be challenged in this proceeding.

### 2. MED Trends Cannot Establish that It Has Suffered or Will Suffer a Non–Trivial Competitive Injury Because It Is Not a Potential Awardee under the T4 Multiple–Award Contract

MED Trends cannot establish standing for the additional reason that it does not have a T4 contract and therefore cannot be awarded a task order under that contract. The Federal Circuit has explained that the term "interested party," as used in 28 U.S.C. § 1491(b)(1), does not encompass any party adversely affected or aggrieved by a procurement decision. *AFGE*, 258 F.3d at 1302. Instead, that term is limited to "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.* Because MED Trends is

not a T4 contractor, it cannot be awarded a task order under the T4 program and is therefore neither an actual or prospective awardee in the protested procurement.[6] For that reason, plaintiff cannot establish that it has suffered or will suffer a non-trivial competitive injury that might be redressed by judicial relief.

### 3. MED Trends Cannot Challenge the Decision to Limit the Competition for the Protested Task Order to SDVOSBs Because It Was Not Injured or Harmed by that Decision

Finally, MED Trends has no standing to challenge defendant's decision to limit the competition for the protested task order to SDVOSBs because plaintiff has failed to demonstrate that it has a direct economic interest that would be adversely affected by the government's procurement action. It is a fundamental principle of standing that a plaintiff must establish that it has sustained, or will sustain, some concrete injury as a result of the challenged governmental action. *See Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (holding that injury-in-fact, causation, and redressability are essential requirements of Article III standing); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (holding that a plaintiff must specifically allege facts sufficient to support its assertion of injury-in-fact). The Federal Circuit has held that the requirements of Article III standing apply equally to this court. *See Hoopa Valley Tribe v. United States*, 597 F.3d 1278, 1283–84 (Fed.Cir. 2010) (affirming the dismissal of a suit by an Indian tribe because it had not demonstrated injury-in-fact). It is also black letter law

---

**5.** The court notes that a suspended contractor may nonetheless be awarded a contract based upon a determination by the head of the contracting agency that the award is warranted by a "compelling reason." *See* 48 C.F.R. § 9.405(a). The court further notes, however, that such an award appears to be highly unlikely since the government has stated "[g]iven that the VA already has a contract in place with multiple [SDVOSBs] who are bidding on this work, the Secretary of the VA will not be making a finding of a compelling reason to extend this contract." Def.'s Mot. at 11–12.

**6.** Defendant argues that plaintiff lacks standing for the additional reason that it is not listed as an SDVOSB on the public list of such small business concerns maintained by the Secretary of Veterans Affairs pursuant to 38 U.S.C. § 8127(f)(2)(A). Plaintiff disputes that assertion, and claims that it is listed on an "informal" list maintained by the VA. Defendant contends that no such "informal" list exists and provides a declaration from the VA to that effect. *See* Def.'s Resp. Ex. 3. Because it is unnecessary to the court's resolution of this case, the court need not resolve this particular dispute between the parties.

that a plaintiff does not, subject to narrow exceptions not applicable here, have standing to enforce the rights of third parties. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

In this case, as noted by defendant, the government's decision to set aside the protested procurement for small business concerns owned by veterans with service-connected disabilities under the T4 contract resulted in no harm to plaintiff. *See Labatt Food Serv., Inc. v. United States,* 577 F.3d 1375, 1379–80 (Fed.Cir.2009) (holding that a bid protest plaintiff must demonstrate that the government's alleged legal violation resulted in particularized harm to that plaintiff). The only parties who might have been harmed by that decision were non-SDVOSBs with T4 contracts, and plaintiff cannot seek to enforce their rights in this bid protest. Nor can plaintiff point to their alleged injuries for the purpose of establishing its own standing. For those reasons, any claims based on 41 U.S.C. § 4106 must be dismissed as beyond the subject matter jurisdiction of this court.

## B. MED Trends Has Waived Any Challenges to the Procurement of the Protested Task Order under the T4 Program

In addition to its arguments based on the failure of plaintiff to establish jurisdictional standing, defendant also asserts that many of the arguments and claims advanced by plaintiff have been waived because they were apparent on the face of the solicitation for the T4 contracts and were not raised before the due date for bids. The court agrees that the legal errors alleged by plaintiff would have been waived if those errors were clear on the face of the T4 contract solicitation. *See Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1315 (Fed.Cir.2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims.").

■ It is clear that plaintiff was well aware of the T4 program before the VA awarded the multiple-award contracts under that program. MED Trends attended the industry day for the procurement, Def.'s Mot. Ex. 1 at AR70, and met with VA representatives to discuss the procurement at that time, *id.* at AR85. Furthermore, MED Trends participated as a team member or subcontractor for six separate offerors in the T4 competition, and three of those offerors were ultimately awarded T4 contracts. Def.'s Resp. at 5. The court must therefore address the issue of whether the legal violations alleged by MED Trends were apparent on the face of the solicitation for the T4 contracts, the terms of which were known to plaintiff before bids on those contracts were due.

In its response to defendant's motion to dismiss, MED Trends boldly proclaims that "Plaintiff MED Trends Waived Nothing When It Did Not Challenge The Terms Of The Solicitation For The T4 Multiple–Award Contracts." Pl.'s Resp. at 12. Unfortunately, this provocative statement appears only in a heading, and plaintiff utterly fails to address the argument that its claims have been waived under *Blue & Gold Fleet* in the section below that heading, or anywhere else in its response. Instead, MED Trends proceeds to address the merits of the arguments that defendant asserts have been waived without bothering to address whether they have in fact been waived. For the reasons discussed below, the court holds that they have.

## 1. MED Trends Has Waived the Argument that the Competition for the Protested Task Order, and the Competition for the T4 Multiple–Award Contracts, Violated 38 U.S.C. § 8127 and 48 C.F.R. § 819.7005

Defendant notes that the solicitation for the T4 Multiple–Award Contracts stated that the competition for those contracts would not be limited to SDVOSBs. For that reason,

plaintiff cannot now argue that the government's failure to so limit the competition for those contracts was in violation of 38 U.S.C. § 8127(d) and 48 C.F.R. § 819.7005. Because the alleged violation of those provisions would have been apparent on the face of the solicitation for the T4 contracts, plaintiff was required to challenge the alleged violation before the closing date for the submission of bids.

The solicitation for the T4 contracts did not state that the competition for those contracts would be limited to SDVOSBs. In fact, the solicitation expressly noted that up to eight of the fifteen contracts might be awarded to non-SDVOSBs. Def.'s Mot. Ex. 1 at AR414 ("The Government intends to award up to 15 contracts, which will include awards of at least four contracts to Service–Disabled Veteran–Owned Small Businesses (SDVOSB) and at least three contracts to Veteran–Owned Small Businesses (VOSB)."). If the government's failure to set aside the T4 competition for SDVOSBs was contrary to law, as plaintiff argues, then that issue should have been raised before the closing date for bids under the solicitation. MED Trends' failure to raise the issue at that time constitutes a waiver of that argument under *Blue & Gold Fleet.*

### 2. MED Trends Has Waived the Argument that Limiting the Competition for the Protested Task Order to SDVOSBs with T4 Contracts Violated 41 U.S.C. § 4106

MED Trends argues that the government's decision to limit the competition for the protested task order to SDVOSBs with T4 contracts was also in contravention of 41 U.S.C. § 4106(c), which states that all holders of a multiple-award contract must be afforded a fair opportunity to compete for task orders under the contract. While MED Trends' explanation as to exactly how section 4106(c) was violated lacks detail, if that set-aside violated section 4106(c), as plaintiff contends, then that alleged violation would have been apparent on the face of the solicitation for the T4 contracts, and plaintiff has thus waived that argument under *Blue & Gold Fleet* as well.

The solicitation for the T4 contracts stated that "[f]or the purposes of meeting agency goals, the CO shall limit task order competition to small business concerns if the CO has a reasonable expectation that two or more such concerns will submit offers and that the award can be made at a fair and reasonable price and offers the best value to the Government." Def.'s Mot. Ex. 1 at AR367. *See also id.* at AR351 ("In order to meet contracting goals, the Government reserves the right to set-aside at the task order level."). In light of those clear statements, plaintiff cannot now seek to challenge the government's decision to set aside the protested task order for SDVOSBs. That argument has been waived.

### 3. MED Trends Has Waived the Argument that the Requirements of the Protested Task Order Cannot Be Competed under the T4 Program

MED Trends states that it does not challenge the task order procurement or the overall T4 program. Rather, according to plaintiff, its protest is directed at the government's decision to compete these particular requirements as a task order under the T4 program. Defendant, in contrast, notes that the solicitation for the T4 contracts described the type of work to be performed pursuant to task orders under the contracts, and the work contemplated under the protested task order falls squarely within that description. The government's assertion is supported by the language of the solicitation for the T4 contracts.

The services to be provided pursuant to task orders under the T4 contracts would include "program management and strategy planning, systems/software engineering, enterprise network, cyber security, operation and maintenance and IT facility report." Def.'s Mot. Ex. 1 at AR10. The solicitation states that the services to be provided under task orders in the T4 program would include "healthcare information processing. . . ." *Id.* at AR336. In its answer to a question from a potential bidder, moreover, the VA explained that "[h]ealthcare information processing is part of Para 4.2 in the T4 Performance Work Statement." *Id.* at AR99. While the solicitation does not expressly state that services

related to the VBMS–R software would be competed under the T4 program, those services fall within the description of work set forth in the solicitation. In addition, the VA noted during the "industry day" for the procurement, which was attended by MED Trends, that the T4 solicitation "has been written to accommodate the breadth of the Department of Veterans Affairs IT requirements[,]" *id.* at AR32, and indicated that some of the services currently performed under the VETS GWAC might be competed under the new T4 program, *see id.* at AR11 (noting that one of the objectives of the T4 program was to establish "a vehicle to bring service dollars currently going directly to GSA or other agencies under VA oversight and control"). Thus, in this case, plaintiff was clearly on notice of the requirements which the VA planned to procure through the T4 multiple-award task orders and had ample opportunity to protest any perceived improprieties prior to the submission of bids and the award of the T4 contracts.

MED Trends' argument that the requirements contained in the task order should have been competed outside of the T4 program was waived because that alleged violation was not challenged before the closing date for the T4 contract solicitation.

**C. MED Trends Cannot Challenge the SBA Suspension or Its Placement on the Excluded Parties List System in this Proceeding**

■ MED Trends argues that the temporary suspension imposed by the SBA was arbitrary and capricious and constituted an unlawful punishment in contravention of law. It further asserts that it may properly challenge that governmental action in this bid protest because the suspension is connected to the protested procurement. Defendant responds that the court may not exercise jurisdiction over the purported challenge to the SBA suspension because it was not issued "in connection with" any procurement now before the court. The court concludes that it is without subject matter jurisdiction to address the suspension of plaintiff from federal contracting or its placement on the EPLS.

The court first notes that there are a number of decisions holding that this court has jurisdiction to review suspensions and debarments in certain limited circumstances. *See IMCO, Inc. v. United States,* 97 F.3d 1422 (Fed.Cir.1996); *ATL, Inc. v. United States,* 735 F.2d 1343 (Fed.Cir.1984); *Electro–Methods, Inc. v. United States,* 728 F.2d 1471 (Fed.Cir.1984). Those cases, however, are distinguishable from the case at bar in a number of respects. First, each of those cases held that the source of this court's subject matter jurisdiction over such cases was the grant of implied-in-fact contract jurisdiction under 28 U.S.C. § 1491(a)(1), rather than the more specific bid protest jurisdiction of 28 U.S.C. § 1491(b)(1). This court's jurisdiction to hear bid protests under section 1491(a)(1) was based on the understanding that the submission of a bid by an offeror in response to a solicitation resulted in an implied-in-fact contract between the offeror and the government, under which the government promised to fairly and honestly consider the bid submitted by the offeror. *See United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983).

In *Sterlingwear of Boston, Inc. v. United States,* 11 Cl.Ct. 517 (1987), the United States Claims Court explained that the source of the court's jurisdiction to review suspensions or debarments is its jurisdiction over implied-in-fact contracts under section 1491(a)(1). The court noted that "[i]t is axiomatic that when a contractor, who has submitted a responsive bid which would under normal circumstances entitle it to an award of the contract, is denied that contract because of improper administrative conduct on behalf of the government, that contractor, as plaintiff clearly alleges here, has had its bid denied full and honest consideration." *Id.* at 522–23 (footnote omitted). But the court further noted that the submission of a responsive bid is a jurisdictional prerequisite to such a challenge because it creates the implied-in-fact contract that allows the court to exercise jurisdiction under section 1491(a)(1). *Id.* at 523–24. The Federal Circuit has adopted the same approach to such challenges. *See IMCO,* 97 F.3d at 1425 ("Thus, the issue is whether the proposed debarment,

which rendered IMCO's bid ineligible for award and resulted in cancellation of the IFB, was arbitrary or capricious. If it was not, the government did not breach its contractual duty [to fairly and honestly consider the bid].").

The Federal Circuit has held that this court retains the implied-in-fact contract jurisdiction conferred under section 1491(a)(1), even after the enactment of section 1491(b)(1), at least when the plaintiff has no remedy under section 1491(b)(1). *See Res. Conservation Grp., LLC v. United States,* 597 F.3d 1238, 1245 (Fed.Cir.2010). In this case, the source of this court's jurisdiction to review the SBA suspension is significant because plaintiff never submitted a bid that might have created an implied-in-fact contract obligating the government to consider such a bid fairly and honestly. In that respect, this case is distinguishable from the other cases noted above. *See IMCO,* 97 F.3d at 1423 (noting that the plaintiff had submitted a bid in response to the solicitation, and was in line for award of the contract, before it was proposed for debarment); *ATL,* 735 F.2d at 1344 (noting that the plaintiff was the low bidder in the challenged procurement); *Electro–Methods,* 728 F.2d at 1472 (noting that the plaintiff had outstanding bids on twenty-eight solicitations at the time of its suspension).

In short, it is clear that this court may not exercise jurisdiction to review the SBA suspension or the related placement of plaintiff on the EPLS pursuant to section 1491(a)(1) because plaintiff has not submitted any bid that might form the basis of an implied-in-fact contract with the government. There is no evidence that plaintiff submitted a bid for a T4 multiple-award contract, and it cannot submit a bid for the protested task order because it does not have a T4 contract. Thus, the only potential basis for jurisdiction

over MED Trends' purported challenge to the SBA suspension is section 1491(b)(1).

The Federal Circuit has read the language of section 1491(b)(1) broadly. *See RAMCOR Servs. Grp. v. United States,* 185 F.3d 1286, 1289 (Fed.Cir.1999) (holding that section 1491(b)(1) "is very sweeping in scope" and should be broadly construed). This court has not squarely addressed the issue of whether section 1491(b)(1) provides an independent basis of subject matter jurisdiction to review suspensions and debarments in the context of a bid protest, but it has noted that the broad language of that section might permit such an interpretation. *See FAS Support Servs., LLC v. United States,* 93 Fed.Cl. 687, 696 (2010) (noting that while the language of section 1491(b)(1) might be sufficiently broad to permit the review of suspensions and debarments, that question was unsettled and was "not necessary to resolve this matter at this time"). In this case, however, the court concludes that the SBA suspension is not within this court's jurisdiction because the suspension was not imposed "in connection with" the protested procurement.

The court is aware of only one case in which this court appeared to review a suspension under section 1491(b)(1). *See Lion Raisins, Inc. v. United States,* 51 Fed.Cl. 238 (2001). The court notes, however, the facts in *Lion Raisins* are distinguishable from the facts here. In that case, the challenged suspension was connected to the protested procurement because the suspension was imposed by the procuring agency.[7] *See id.* at 240–41.

The parties agree that the challenged SBA suspension was based on the recent indictment of one of MED Trends' former employees, who was terminated by the company in September 2010. The indictment alleges that the employee in question conspired to submit, and did in fact submit, fraudulent documentation to the government for the

---

7. In addition, the plaintiff in that case had submitted a bid in response to the solicitation for the protested procurement so jurisdiction to review the challenged suspension may have been proper under section 1491(a)(1). While the court in *Lion Raisins* might have possessed subject matter jurisdiction over the challenge to the suspension under section 1491(a)(1), it is clear that the court reviewed the suspension under section 1491(b)(1). *See id.* at 247 (citing section 1491(b) as the source of its jurisdiction over bid protests), 251 (rejecting a claim for lost profits that the plaintiff had attempted to advance under an implied-in-fact contract theory pursuant to section 1491(a)(1)).

purpose of certifying plaintiff as an SDVOSB and as a Historically Underutilized Business Zone (HUBZone) small business concern. *See generally* Def.'s Mot. Ex. 2. Those certifications, according to the indictment, allowed plaintiff to obtain its contract under the VETS GWAC program. *See id.* ¶ 20(b). Accordingly, it is clear that the suspension was imposed in connection with that contract, rather than the protested procurement. Indeed, in its second motion for a preliminary injunction, MED Trends concedes that it is not the PWS task order that provides the jurisdictional basis to review the SBA suspension, but instead states that one of its task orders under the VETS GWAC is the "[p]rocurement here in issue." Pl.'s 2d Mot. ¶ A.

MED Trends argues that the SBA suspension is connected to the protested procurement because: (1) the suspension applies throughout the executive branch; (2) the VA is part of the executive branch; and (3) the protested task order is being competed by the VA. The approach suggested by plaintiff would allow any suspended or debarred contractor to challenge its suspension or debarment in any procurement conducted by the federal government for the sole reason that the suspension or debarment would have prevented that contractor from obtaining a contract under the procurement in question. The court cannot adopt the expansive reading of section 1491(b)(1) urged by plaintiff. Because the court concludes that the SBA suspension was not imposed in connection with the protested procurement, it is without subject matter jurisdiction over MED Trends' challenge to that suspension.

Because the complaint must be dismissed for lack of jurisdiction, the court need not address MED Trends' motions for injunctive relief.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed November 16, 2011, is **GRANTED;**

(2) Plaintiff's Motion for a Preliminary Injunction, filed November 8, 2011, is **DENIED** as moot;

(3) Plaintiff's Second Motion for a Preliminary Injunction, filed November 22, 2011, is **DENIED** as moot;

(4) The Clerk's Office is directed to **ENTER** final judgment for defendant, **DISMISSING** the complaint, without prejudice; and

(5) No costs.